**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CARL BROWN,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **No. 26-cv-4551** |
| | : | |
| **NORTH HAMPTON COUNTY JAIL,** | : | |
| ***et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**Joseph F. Leeson, Jr.** **November 17, 2026**
**United States District Judge**

Carl Brown, a prisoner currently incarcerated at the Northampton County Jail ("NCJ"), brings this civil action pursuant to 42 U.S.C. § 1983 against NCJ and a correctional officer identified as Sgt. David Collins. He also moved to proceed *in forma pauperis*.[1] For the following reasons, the Court will grant Brown leave to proceed *in forma pauperis* and dismiss his Complaint for failure to state a claim, with leave to amend.

## I. FACTUAL ALLEGATIONS[2]

Brown, a pretrial detainee at NCJ, states that he served thirty days in the "hole," and was on "24/7" lockdown for twenty days straight. Compl. 11. He "barely got to shower." *Id.* On

[1] The Court initially denied Brown's motion to proceed *in forma pauperis* because he had not provided a prisoner account statement pursuant to 28 U.S.C. § 1915(a)(2). *See* ECF No. 5. Brown thereafter submitted the prisoner account statement and additional motions to proceed *in forma pauperis*. *See* ECF Nos. 6, 7.

[2] The following allegations are taken from Brown's Complaint. *See* ECF No. 2. Where the Court quotes from the Complaint, punctuation, spelling, and capitalization errors will be cleaned up as needed. The Court adopts the sequential pagination supplied to the Complaint by the CM/ECF docketing system.

two occasions he was served food that had mouse droppings on it. *See id*. When he sent it back, "they laughed then let me starve for the rest of the night." *Id*. Brown went fifteen hours without food at a time, and was served rotten apples. *See id*. Prison officials took his personal property and left him only with shirts and a jumper. *See id*. "Trying to get ahold of a lawyer is next to impossible" and the first public defender he spoke with said that they did not receive any of Brown's requests. *Id*. He finally got in touch with home, and they had not received any mail, which led Brown to conclude that the jail wanted to silence him and tampered with his mail. *See id*. He filed a grievance but has not heard anything, and his attempt to reach his case manager was unsuccessful. *See id.* Brown alleges the jail uses "inhumane tactics" and retaliates any time it is reported. *Id*. He fears for his life for writing the Complaint. *See id.*

On June 19, 2026, Brown heard that "Adam," an inmate in the cell next to his, died by suicide. *Id.* at 12. Adam had been sentenced to 45 days in the "hole," and he and Brown helped each other survive by sharing books and food. *Id.* Adam also had not showered "in days." *Id.* Brown believes that the living conditions caused Adam's suicide. *See id*. Correctional officers allegedly show favoritism, and if they do not know said inmate, the inmate will be forgotten. *See id*. Brown says that "[i]n the last week there have been suicides." *Id.*

Brown filed his Complaint alleging violations of his constitutional rights and requesting that "you at least send some one [sic] down here and help us the next guy might not be so lucky." *Id.*

## II. STANDARD OF REVIEW

The Court grants Brown leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the screening stage, the Court accepts the facts alleged in the *pro se* Complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim. *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As Brown is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III. DISCUSSION

Brown brings his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person

---

[3] However, as Brown is a prisoner, he will be obligated to pay the $350 filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)).

"Although a county may be liable under § 1983, a county jail is not a proper defendant under § 1983." *Hetsberger v. Essex Cnty. Corr.*, No. 21-9322, 2021 WL 4727476, at *1 (D.N.J. July 19, 2021) (collecting cases). To proceed against a municipal entity such as a county under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), by specifically stating "what exactly that custom or policy was," *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). A plaintiff may also proceed against a municipality by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

The Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees like Brown. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 538 (1979). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks

whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

In that regard, a "particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Bistrian v. Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68), *abrogation on other grounds recognized by Fisher*, 115 F.4th at 204; *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017). Courts should consider the totality of the circumstances in evaluating such a claim. *See Bistrian*, 696 F.3d at 373 ("In evaluating a pretrial detainee's claim of unconstitutional punishment, courts must examine the totality of the circumstances within the institution." (quoting *Stevenson*, 495 F.3d at 68)). Furthermore, "[i]n determining whether restrictions or conditions are reasonably related to the Government's interest in maintaining security and order and operating the institution in a manageable fashion," courts are obligated to keep in mind that "[s]uch considerations are peculiarly within the province and professional expertise of corrections officials . . . ." *Stevenson*, 495 F.3d at 68 n.3 (quoting *Bell*, 441 U.S. at 540 n.23).

As for access to legal counsel, "[u]nder the Sixth Amendment, a pretrial detainee has a right to utilize counsel to defend against a criminal case that the state has brought against him." *Prater v. City of Phila.*, No. 11-1618, 2015 WL 3456659, at *4 (E.D. Pa. June 1, 2015) (on remand) (citing *Benjamin v. Fraser*, 264 F.3d 175, 186 (2d Cir. 2001)). "The Supreme Court [has] held that 'inmates must have a reasonable opportunity to seek and receive the assistance of attorneys' and that [prison] '[r]egulations and practices that unjustifiably obstruct the availability of professional representation . . . are invalid.'" *Benjamin*, 264 F.3d at 184 (fourth alteration in

original) (quoting *Procunier v. Martinez*, 416 U.S. 396, 419 (1974)). Thus, where an institutional restriction impedes a pretrial detainee's access to criminal counsel, "the practice must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id.* at 187 (quoting *Bell*, 441 U.S. at 547). A prison regulation restricting a pretrial detainee's contact with his attorney will be unconstitutional where it "unreasonably burden[s] the inmate's opportunity to consult with his attorney and to prepare his defense." *Id.* (quoting *Wolfish v. Levi*, 573 F.2d 118, 133 (2d Cir. 1978)).

To the extent that Brown references retaliation in the Complaint, in order to state a plausible First Amendment retaliation claim, "a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) he suffered some adverse action at the hands of prison officials, and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to take that action." *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)) (internal quotation marks omitted). A prisoner's filing of a lawsuit, grievance, or other complaint, or even expressing an intent to do so to prison authorities, qualifies as constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016) ("For purposes of Watson's retaliation claim, we cannot discern a substantive distinction between retaliation for informing prison officials of an intent to file a grievance or requesting the necessary forms to do so on the one hand, and actually filing such a grievance on the other."); *see also Coit v. Garman*, 812 F. App'x 83, 86 (3d Cir. 2020) (*per curiam*) (examining whether prisoner plaintiff was retaliated against for filing grievances, which is protected speech under the First Amendment) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)). Regarding the second element, "[a]n adverse action 'is one sufficient to deter a person of ordinary firmness from exercising his First Amendment rights,'"

*Watson*, 834 F.3d at 422 n.6 (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000)), and "'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*,'" *id.* at 423 (alteration in original) (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)). To satisfy the third element, a prisoner must allege a causal link between the specific protected activity and the adverse action. *See, e.g.*, *Hammonds v. Headman*, 645 F. App'x 149, 152 (3d Cir. 2016) (*per curiam*) ("[B]ecause Hammonds' conclusory allegations fail to raise the required inference of a causal link between his grievance and the filing of misconduct reports, he failed to state a retaliation claim.").

Turning to the particular allegations of this Complaint, Brown sued NCJ and Sergent Collins in his individual and official capacity. *See* Compl. 1-2. As noted above, although a county like Northampton County may be sued under § 1983, a county jail like NCJ may not. *See Hetsberger*, 2021 WL 4727476, at *1. Regardless, Brown's claims against Collins in his official capacity are treated as claims against the employing municipality, which also means those claims must meet the pleading standards for municipal liability. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). However, nothing in the Complaint alleges a municipal policy or custom, or deliberate indifference attributable to the municipality. To the extent that Brown would point to his living conditions at NCJ as emblematic of some municipal policy, the claim is not plausible because Brown must allege sufficient facts to show that the municipality "had knowledge of 'similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury.'" *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (alterations in original) (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990)); *see also Phillips v. Northampton Co., P.A.*, 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*) (affirming dismissal of complaint where "[o]ther than some wholly

conclusory and highly generalized assertions about unspecified patterns of misconduct, [the plaintiff] pleaded no facts to support the existence of any policy, custom, or practice beyond those involving his own arrests, convictions, and confinement"). Brown has not made such allegations here, and accordingly, he has not alleged a basis for an official capacity claim.

The claim against Collins in his individual capacity claim is also not plausible because Brown has not alleged that Collins was involved in any way with the events related in the Complaint. *Rode*, 845 F.2d at 1207 (holding that a plaintiff must allege personal involvement of a defendant for § 1983 liability to attach). Brown never mentions Collins in the Complaint beyond naming him as a Defendant in "The Parties to the Complaint" section of the form complaint. Compl. 2. None of the events described by Brown are alleged to have occurred because of any act or omission by Collins specifically; general references to "the C.O." or "they," *id.* at 12, do not suffice to allege personal involvement, *see Lawal v. McDonald*, 546 F. App'x 107, 113 (3d Cir. 2014) (agreeing with the district court that "the repeated and collective use of the word 'Defendants' fail[ed] to name which specific Defendant engaged in the specific conduct alleged" (alteration in original) (internal quotation marks omitted)); *Walker v. Wetzel*, No. 22-1357, 2022 WL 4103632, at *3 (3d Cir. Sept. 8, 2022) (*per curiam*) (affirming district court's conclusion that generalized reference to "'medical staff and officers' did not allege the personal involvement of any of the named defendants"). Moreover, section 1983 liability cannot be premised simply on Collins's supervisory position. *See Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, . . . [a plaintiff] must plead that each Government-official defendant, through his own individual actions, has violated the Constitution"). "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not

constructive." *Chavarriaga v. N.J. Dept. of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). Brown's constitutional claims cannot proceed in their current form.

Brown's claim will thus be dismissed without prejudice. The Court will provide Brown with another opportunity to articulate claims against viable defendants in an amended complaint, should he wish to proceed.[4] Because the Court has found that Brown's claims are not viable, Brown's motion for appointment of counsel will be denied without prejudice as premature. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (stating that before exercising discretion to appoint counsel "the district court must consider as a threshold matter the merits of the plaintiff's claim").

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Brown leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice to his filing an amended complaint in the event he can identify viable defendants and provide additional factual allegations to cure the defects with his claims. Brown's Motion to Appoint Counsel will be denied as premature. An Order follows, which provides further instructions about filing an amended complaint.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge

---

[4] Because Brown does not allege his claims against a specific defendant in the Complaint, the Court has not discussed the deficiencies with the legal claims themselves in this Memorandum. Brown should be aware that any amended complaint must allege sufficient facts against viable identifiable defendants and in support of the legal elements stated above to state plausible § 1983 claims.